# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# FORT WORTH DIVISION

| | | |
|---|---|---|
| **EARNEST EUGENE HARRIS,** § | | |
| **(TDCJ No. 02195155),** § | | |
| § | | |
| Plaintiff, § | | |
| § | | |
| v. § | Civil Action No. 4:18-cv-638-P | |
| § | | |
| **OFFICER JOHN DOE, Et Al.,** § | | |
| § | | |
| Defendants. § | | |

## OPINION and ORDER OF DISMISSAL
## UNDER 28 U.S.C. §§ 1915A & 1915(e)(2)(B)

This case was recently reassigned from the docket of Judge Reed O'Connor to this the "P" docket of the undersigned district judge. The case remains before the Court for review of pro-se inmate/plaintiff Earnest Eugene Harris's pleadings under the screening provisions of 28 U.S.C. §§ 1915A and 1915(e)(2)(B). After conducting that review, the Court finds that all claims asserted by plaintiff Harris must be dismissed under authority of these provisions.

## I. BACKGROUND

Harris's original form civil complaint with attachment pages was file-stamped on August 6, 2018. Complaint 1-14, ECF No. 1. In response to the prior Judge's order, Harris completed and filed answers to the Court's questionnaire on September 5, 2019. Questionnaire Answer 1-12, ECF No. 15. Harris also recently filed Supplemental Answers to the Court's questionnaire. Supp. Answer 1-7, ECF No. 16.

In the complaint, Harris names as defendants City of Fort Worth police officer John

Doe, other Fort Worth officers as unnamed Doe defendants,[1] property personnel for the Fort Worth Police Department, Fort Worth City Manager David Cooke, and the City of Fort Worth, Texas. Complaint 3, 10, ECF No. 1. Harris names the defendants in both individual and official capacities, and he seeks relief against them for alleged violation of his constitutional rights under 42 U.S.C. § 1983.[2] Complaint, 6, ECF No. 1.

Harris recites that on **October 13, 2015** he was the passenger in a car stopped by Fort Worth police officers. Complaint 7, ECF No.1. After the driver, Sarah Click, gave what Harris labels as "involuntary" consent to search, the officers seized his backpack and computer bag, and began searching through the backpack/computer bag and his personal items contained inside, including a laptop computer, a tablet, a Garmin GPS, a TomTom GPS, an Apple notebook, a digital camera, and many other items.[3] Complaint 7-8, ECF No. 1; Suppl. Answers 2-3, ECF No. 16. Harris acknowledges that his backpack was also found by the

---

[1] In his Supplemental Answers, Harris identified the two primary Fort Worth police officers involved in his claims as Officer Nichols and Officer Aleshire. Suppl. Answers 3, ECF No. 16. Because the Court has determined, as explained *infra*, that Plaintiff's claims are barred by the applicable statute of limitations or otherwise fail to state a claim upon which relief may be granted, it is not necessary for the Court to discern the separate actions of each of these persons.

[2] "Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C.A. § 1983 (West 2012).

[3] It is unclear whether a backpack containing a computer bag was seized or whether a backpack and a separate computer bag were seized. As the analysis assumes the fact that all of Harris' personal property was seized and detained by Fort Worth officials, the difference would not change the analysis.

officers to contain drug paraphernalia (a methamphetamine pipe) and an amount of marijuana. Complaint 8, ECF No. 1. As a result, Harris was arrested and charged with possession of a controlled substance under one gram and possession of marijuana. Complaint 8, ECF No. 1.

Harris contends that Officer Doe illegally tampered with the seized evidence, and because he could not make bond, he was detained for 13 months as a result of the charges until said charges were dismissed in November 2016. *Id.* Harris also complains of the seizure of all of the property in his backpack, and acknowledges that he began attempting to retrieve the property through his "agent" identified as Paula White, but was "denied most of his property." *Id.* Harris writes that after the charges were dropped and he was released, he attempted in person to retrieve his property, and was told it had been disposed of and that nothing could be done to obtain relief. *Id*. at 9.

Harris asserts two separate violations of his constitutional rights. He contends that his Fourth Amendment right to not be subject to an unreasonable search and seizure was violated when Officer John Doe searched his property without his consent and without probable cause. Complaint 9, ECF No. 9. He also asserts a claim under the Fourteenth Amendment for a violation of due process of law in the taking and detention of his personal property items found in the backpack/computer bag. *Id.* Harris seeks relief in the form of a declaration from this Court that his Fourth and Fourteenth Amendment rights were violated, an injunction against the City of Fort Worth, Texas regarding its training policies, as well as both compensatory and punitive monetary damages. Complaint 10-12, ECF No. 1.

## II.  LEGAL STANDARD OF REVIEW UNDER §§ 1915A and 1915(e)(2)(B)

Plaintiff Harris is an inmate who has been permitted to proceed in forma pauperis. As

3

a part of the Prison Litigation Reform Act ("PLRA"), Congress enacted 28 U.S.C. § 1915A, which requires a district court to review a complaint from a prisoner seeking relief from a governmental entity, officer, or employee as soon as possible after docketing. *See* 28 U.S.C.A. § 1915A(a) (West 2019). Because Harris is proceeding in-forma-pauperis, his complaint is also subject to screening under 28 U.S.C. § 1915(e)(2). Both § 1915(e)(2) and § 1915A provide for *sua sponte* dismissal of the complaint or any portion thereof, if it is frivolous, malicious, fails to state claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C.A. §§ 1915(e)(2)(B) and 1915A(b)(West 2019).

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. A claim lack an arguable basis in fact when it describes "fantastic or delusional scenarios." *Id*. at 327-28. A complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To avoid dismissal for failure to state a claim, plaintiffs must allege facts sufficient to "raise the right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Mere "labels and conclusions" nor "a formulaic recitation of the elements of a cause of action" suffice to state a claim upon which relief may be granted. *Id.*

## III. ANALYSIS

### A. Application of the Statute of Limitations

The Supreme Court has held that all § 1983 actions are governed by the statute of limitations for personal-injury actions for the state of suit. *See Wilson v. Garcia*, 471 U.S. 261, 273-76 (1985) (holding that state statute of limitations period for personal-injury actions applies to all claims under 42 U.S.C. § 1983). In Texas, the applicable limitations period is two years. *See Moore v. McDonald*, 30 F.3d 616, 620 (5th Cir. 1994) (noting that district courts in Texas must use Texas's general two-year, personal-injury limitations period); *see* Tex. Civ. Prac. & Rem. Code 16.003(a)(West 2017) (Texas's two-year, personal-injury limitations statute). A district court may dismiss claims *sua sponte* under the screening provisions where it is clear from a review of the complaint that the alleged claims are barred by the applicable statute of limitations. *See Harris v. Hegmann*, 198 F.3d 153, 156 (5th Cir. 1999); *see also Moore*, 30 F.3d at 620 (citing *Gartrell v. Gaylor*, 981 F.2d 254, 256 (5th Cir. 1993)).

Accrual of a claim under § 1983 is determined by federal law, under which a claim generally accrues when a plaintiff knows or has reason to know of the injury giving rise to the cause of action. *See Harris,* 198 F.3d at 157 (citing *Jackson v. Johnson,* 950 F.2d 263, 265 (5th Cir. 1992) and *Burrell v. Newsome*, 883 F.2d 416, 418 (5th Cir. 1989)). In evaluating the Plaintiff's awareness, the court looks at two elements; (1) the existence of the injury; and (2) causation, or the connection between the injury and the defendant's actions. *Pitotowski v. City of Houston*, 51 F.3d 512, 516 (5th Cir. 1995) (citation omitted).

### (1) Fourth Amendment Claim

Although the original complaint was file-stamped on August 6, 2018, Plaintiff signed the complaint and attachment pages on July 23, 2018. Complaint 5,12, ECF No. 1. Under the mailbox rule, the complaint was deemed filed on the date Harris gave it to prison officials, and as he signed the document on July 23, 2018, that is the earliest date the case is deemed constructively filed. *See generally Causey v. Cain*, 450 F.3d 601, 604 (5th Cir. 2006) (citing *Houston v. Lack*, 487 U.S. 266, 270-71 (1988) (under the prison mailbox rule, a prisoner's pleading is deemed to have been filed on the date that the pro se prisoner submits the pleading to prison authorities for mailing)); *see also Cooper v. Brookshire*, 70 F.3d 377, 378-81 (5th Cir. 1995) (applying the mailbox rule to the filing of a complaint under § 1983). Plaintiff recites that the illegal search and seizure took place on October 13, 2015. Complaint 7, ECF No.1. On the date of the search and seizure, that is October 13, 2015, there was no "extant conviction" but merely an "anticipated future conviction"; consequently the limitations period on a claim challenging that search began to run on that date. *See Jaramillo v. Renner*, 697 F. App'x 326 (5th Cir. 2017)(finding that the two-year statute of limitations on claims challenging a search and seizure occurring on May 5, 2008 began to run on that same date) (citing *Wallace v. Kato*, 549 U.S. 384, 393 (2007)); *see also Harris v. Rivera*, No.3:11-CV-3013-D, 2013 WL 246709, at * 7 (N.D. Tex. Jan. 23, 2013) ("Because the Harrises became aware of the injuries on which the they base their claim for false arrest, illegal seizure, and the use of excessive and unreasonable force on the day the injuries allegedly occurred—October 26, 2008—the statue of limitations began to run on each component of

this claim that day")(citing *Hitt v. Connell*, 301 F.3d 240, 246 (5th Cir. 2002) and *Piotrowski*, 237 F.3d at 576)). "Where a plaintiff sues for damages for false arrest in violation of the Fourth Amendment under § 1983 and the arrest is followed by criminal proceedings, limitations begins to run at the time the plaintiff is detained in accordance with legal process." *Parker v. Missouri City, Tex.*, CA No. H-12-2484, 2014 WL 7004061, at *14 (S.D. Tex. 2014) (citing *Wallace*, 549 U.S. at 397) (finding that because claims arose out of events occurring on August 20, 2010, including the plaintiff's arrest, he had actual knowledge of the facts giving rise to his claims on that date, such that his claims accrued on that date, and any claim under § 1983 expired [two years later] on August 20, 2012)).

Applying these holdings to the facts of this case, the Court finds that as Earnest Harris knew of the alleged illegal search events on the date the events took place on October 13, 2015, this complaint filed more than two-years later (July 23, 2018), was filed outside the limitations period. Harris does not assert any basis for tolling the limitation period, and although the law previously recognized tolling of the limitation period during criminal proceedings, another judge of this district has aptly explained that is no longer the case:

> In the past, the Fifth Circuit held that the statute of limitations on illegal search and seizure claims did not start to run until criminal proceedings had terminated in the plaintiff's favor. *See Price v. City of San Antonio*, 431 F.3d 890, 895 (5th Cir. 2005); *Brandley v. Keeshan*, 64 F.3d 196, 199 (5th Cir. 1995). However, these holdings have since been abrogated by *Wallace v. Kato*. *See generally Wallace*, 549 U.S. 384; *see also Harris*, 2013 WL 246709, at *7. In *Wallace*, the Supreme Court held that a cause of action related to an arrest accrues when the arrest occurs. *Wallace*, 549 U.S. at 397. Further, the Supreme Court stated that "the tort cause of action accrues, and the statute of limitations commences to run, when the wrongful act or omission results in damages. The cause of action accrues even though the full extent of the injury is not then known or predictable." *Id.* at 391-92 (citing 1 C. Corman, Limitation of Actions § 7.4.1,

at 526-27 (1991)). The Supreme Court's reasoning in *Wallace* has been extended from false arrest claims to apply "equally to claims seeking damages for unconstitutional searches and seizures and related activities." *LeBlanc v. City of Haltom City*, No. 4:10-CV-812-A, 2011 WL 2149908, at *5 (N.D. Tex. May 31, 2011).

*Bobo v. City of Wichita Falls, Tex.*, No. 7:13-CV-031-O, 2013 WL 3179499, at *3 (N.D. Tex. 2013). Thus, all of Harris's claims of illegal search and seizure and lack of probable cause to arrest under the Fourth Amendment, are barred by the applicable two-year statute of limitations.

### (2)     Fourteenth Amendment Claim

Plaintiff's second claim of a constitutional violation against several defendants is for violation of his right to due process of law in the taking and deprivation of his personal property. Complaint 3, 9, 10, ECF No.1. As noted above, Harris alleges that his personal property, including a laptop computer, a tablet, a Garmin GPS, a TomTom GPS, an Apple notebook, a digital camera, and many other items, were seized at the time of the automobile stop and search on October 13, 2015. Complaint, 7-8, ECF No. 1. As explained above, the applicable statute of limitations of a § 1983 claim is that "which the state would apply in an analogous action in its court." *Bourdais v. New Orleans City*, 485 F.3d 294, 298 (5th Cir. 2007)(citation omitted). In this case, the analogous state-law claims are conversion of personal property and taking or detaining the personal property of another, for which the statute of limitations is the same two-year provision applicable to personal injury claims. See Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a) (West 2017). And, as noted above, under federal law governing when a claim accrues, the "limitations period begins to run when the plaintiff

8

'becomes aware that he has suffered an injury or has sufficient information to know that he has been injured.'" *Hitt,* 301 F.3d at 246 (quoting *Helton v. Clements*, 832 F. 2d 332, 335 (5th Cir. 1987)).

In his complaint, Harris writes of the officers "confiscating" his property as "possibly stolen" at the same time of the October 13, 2015 seizure. Complaint 8, ECF No. 1. In the Court's questionnaire, Harris was asked to state the date that he became aware that the property items (other than the seized paraphernalia and marijuana) were confiscated. Harris answered:

> I do not at present know the exact date and time that I became aware that other property items within the backpack and computer bag were confiscated. However, it was the same day or the day after that the Fort Worth Property Dep't released some of my the [sic] items to Paula White my Power of Attorney, which I presume paperwork exists that she signed upon release of those items. To my recollection I did not discover the purported reason the items were confiscated as "possibly stolen" until I got a copy of the police report after my release in November 2016. I had to show my I.D. so I presume there is a log to clarify and verify.

Questionnaire Answer 4, ECF No. 15. Harris also acknowledged in the complaint that he "attempted to retrieve all his property through an agent, Paula White, Plaintiff's Power of Attorney, and was denied most of his property." Complaint 8, ECF No.1. In response to the Court's question about when his agent attempted to retrieve his property, Harris wrote: "Plaintiff's agent and Power of Attorney, Paula White, attempted to retrieve Plaintiff's property in Oct. or Nov. 2015, but was told remaining property not released was part of an ongoing investigation. She was not given any specifics to my recollection." Questionnaire Answers 4, ECF No. 15.

9

Taking Harris answers to the Court's questions together, it is evident that he was aware by the end of November 2015, that the bulk of his property was still being retained by Fort Worth officials. Although Harris contends he did not know the "reason" the property was retained until November 2016, he did know the bulk of the property was withheld on the "same day or the day after [that] the Fort Worth Property Dep't released some of his items to Paula White." Questionnaire Answers 4, ECF No. 15. Harris acknowledges that his agent White was unable to retrieve all of the personal property by no later than November 2015. Thus, Harris knew by November 2015 that the bulk of his personal items were still being withheld from his agent by Fort Worth officials. Upon review of the allegations in the complaint and Harris's answers to the Court's questionnaire, the Court sees no basis to believe that Harris did not know or have reason to know of the events giving rise to his deprivation-of-property due process claims in November 2015. As this suit was constructively filed in July 2018, more than seven months after the applicable two-year limitations period expired in November 2017, Harris claims for violation of the Fourteenth Amendment were filed several months too late. The applicable two-year statute of limitations already had expired prior to the time Harris filed suit.

In sum, as all of Harris's claims for constitutional violations under § 1983 are barred by the applicable statute of limitations, they must be dismissed for failure to state a claim upon which relief may be granted under authority of 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(b)(ii).

### B. Failure to State a Claim for Loss of Property

With regard to Harris's claims under the Fourteenth Amendment arising from the conversion of his personal property, alternatively, Harris has not stated a claim upon which relief may be granted. In order to assert a claim for violation of federal constitutional rights under 42 U.S.C. § 1983, a plaintiff must set forth facts in support of the required elements of a § 1983 action: (1) that he has been deprived of a right secured by the Constitution or laws of the United States; and (2) that the defendants deprived him of such right while acting under color of law. *See West v. Atkins,* 487 U.S. 42, 48 (1988)(citing cases); *Resident Council of Allen Parkway Village v. U.S. Department of Housing and Urban Development,* 980 F.2d 1043, 1050 (5th Cir. 1993). Harris's allegations as to the deprivation of property fail to satisfy the first element.

Harris complains of a loss of property without due process of law. The Fourteenth Amendment to the Constitution provides that no State shall "deprive any person of life, liberty, or property without due process of law." U.S. CONST. amend. XIV § 1. Under the *Parrat/Hudson* doctrine, a random and unauthorized intentional deprivation of property does not give rise to a violation of the Due Process Clause if the state provides an adequate post-deprivation remedy. *See Myers v. Klevenhagen,* 97 F.3d 91, 94 (5th Cir. 1996)(discussing the Supreme Court's decisions in *Parratt v. Taylor,* 451 U.S. 527 (1981) and *Hudson v. Palmer,* 468 U.S. 517 (1983), as dictating that a state actor's random and unauthorized deprivation of property does not result in a violation of procedural due process if the state provides an adequate post-deprivation remedy, and explaining "the doctrine protects the state from liability

for failing to provide a predeprivation process in situations where it cannot anticipate the random and unauthorized actions of its officers.") Thus, in challenging a random intentional property deprivation,[4] the claimant must either take advantage of the available remedies or prove that the available remedies are inadequate. *Hudson,* 468 U.S. at 534-35; *Myers,* 97 F.3d at 94. Texas law allows recovery of monetary damages for loss of use of property during its period of detention. *See Murphy v. Collins,* 26 F.3d 541, 543 (5th Cir. 1994)(holding that "[i]n Texas, the tort of conversion fulfills this requirement"); *see also Beam v. Voss,* 568 S.W.2d 413, 420-21 (Tex. Civ. App.–San Antonio 1978, no writ)(conversion is the unauthorized and unlawful assumption and exercise of dominion and control over the personal property of another, to the exclusion of, or inconsistent with the owner's rights). Because Texas provides an adequate post-deprivation remedy, Harris's claim concerning the taking and detention of his personal property does not rise to a violation of the Due Process Clause. *See Hudson,* 468 U.S. at 536 (noting that even where a prisoner's property was intentionally destroyed, such destruction did not violate the Fourteenth Amendment since the Commonwealth of Virginia provided the prisoner with an adequate post-deprivation remedy.) Thus, alternatively, Harris claim concerning the loss of his personal property does not state a claim of a violation of a constitutional right, and such claim must be dismissed under 28

---

[4] To the extent that Harris claims the loss of his property was only the result of negligence, such allegation also does not state a cause of action under § 1983. *See Daniels v. Williams,* 474 U.S. 327, 328 (1986) ("We conclude that the Due Process Clause is simply not implicated by a *negligent act* of an official causing unintended loss of or injury to life, liberty, or property."); *see also Davidson v. Cannon,* 474 U.S. 344, 347 (1986) (noting where negligence is involved in causing a deprivation of property, no procedure for compensation is constitutionally required).

U.S.C. § 1915A(b)(1) and 28 U.S.C. §§ 1915(e)(2)(B)(ii).

## IV. ORDER

For all of these reasons, it is therefore **ORDERED** that all plaintiff Earnest Eugene Harris's claims in this case are **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. § 1915A(b)(1) and 28 U.S.C. § 1915(e)(2)(B)(ii).

**SO ORDERED** this **5th day** of **November, 2019.**

_____
Mark T. Pittman
UNITED STATES DISTRICT JUDGE